UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

McNAUGHTON-McKAY ELECTRIC CO.,
a Michigan corporation,

    Plaintiff

v

LINAMAR CORPORATION,
a Canadian corporation,

    Defendant
_____/

Case No.:  2:09-cv-11165-SFC-MKM

Honorable Sean F. Cox

| | |
|---|---|
| Richard T. Hewlett (P41271)<br>Attorney for Plaintiff<br>Dawda, Mann, Mulcahy & Sadler<br>39533 Woodward Avenue, Suite 200<br>Bloomfield Hills, MI  48304<br>(248) 642-3700 | Michael C. Gibbons (P51304)<br>Victor A. Veprauskas IV (P59278)<br>Keith C. Jablonski (P62111)<br>Attorneys for Defendant<br>200 East Long Lake Road, Suite 110<br>Bloomfield Hills, MI 48304<br>(248) 645-9400 |

_____/

### DEFENDANT'S MOTION TO QUASH SUBPOENA ISSUED TO CHRYSLER GROUP, LLC
### OR FOR PROTECTIVE ORDER PRECLUDING DISCOVERY

    Defendant Linamar Corporation ("Linamar"), through its attorneys, Beier Howlett, P.C., for its Motion to Quash Subpoena issued by Plaintiff McNaughton McKay Electric Company ("McNaughton") to Chrysler Group, LLC ("Chrysler") or For Protective Order Precluding Discovery, states as follows:

    1.    On February 24, 2010, McNaughton issued a subpoena to Chrysler seeking production of six itemized categories of documents (Exhibit A).

    2.    Chrysler is not a party to this litigation and, upon information and belief, has no contractual relationship with McNaughton.

3. Chrysler and Linamar have an ongoing business relationship. The instant subpoena seeks information about the business relationship between Chrysler and Linamar relative to a project commonly referred to as the DCT Kokomo Project, wherein Linamar was to provide machines to Chrysler for installation in its Kokomo, Indiana plant.

4. The DCT Kokomo Project was canceled by Chrysler in October 2008. This cancellation led Linamar to cancel its contracts with its suppliers, which included Ann Arbor Machine Company, LLC ("Ann Arbor Machine").

5. McNaughton supplied electrical components and parts to Ann Arbor Machine related to the Kokomo Project. McNaughton alleges it was not paid for the component parts provided to Ann Arbor Machine, which were included in machines being manufactured by Ann Arbor Machine for Linamar. Linamar paid Ann Arbor Machine a cancellation fee as the result of the overall project being terminated by Chrysler.

6. McNaughton seeks to recover from Linamar (on an unjust enrichment theory) the money it allegedly did not receive from Ann Arbor Machine for those component parts.

7. McNaughton now seeks to obtain information from Chrysler via subpoena pertaining to the business relationship between Chrysler and Linamar, and certain other documents related to the termination of the DCT Kokomo Project as a whole.

8. Linamar seeks a Protective Order based upon Fed. R. Civ. P. 26(b)(2)(C) and 26(c) because the discovery sought by the subpoena from McNaughton to Chrysler is unreasonably cumulative or duplicative, and has been or can be obtained from another source, namely Linamar, that is more convenient, less burdensome, or less expensive; and based upon Fed. R. Civ. P. 26(b)(1), because the information sought is irrelevant to the claims made by McNaughton in this matter.

9.      Linamar seeks to quash the subpoena from McNaughton to Chrysler pursuant to Fed. R. Civ. P. 45(c)(3) because the subpoena requires disclosure of privileged or other protected material, and/or a trade secret or other confidential research, development, or commercial information relative to the business relationship between Chrysler and Linamar.

WHEREFORE, for reasons to be more clearly expounded in the accompanying Brief in Support of Motion, Linamar Corporation respectfully requests that this Court issue a Protective Order or quash the subpoena dated February 24, 2010, issued to Chrysler by McNaughton, which requires production of documents on March 12, 2010, at 10:00 a.m.

BEIER HOWLETT, P.C.

/s/ Keith C. Jablonski_____
Michael C. Gibbons (P51304)
Keith C. Jablonski (P62111)
Attorneys for Defendant
200 E. Long Lake Road, Suite 110
Bloomfield Hills, MI  48304
(248) 645-9400
kjablonski@beierhowlett.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

McNAUGHTON-McKAY ELECTRIC CO.,
a Michigan corporation,

    Plaintiff

v

LINAMAR CORPORATION,
a Canadian corporation,

    Defendant
_____/

Case No.:  2:09-cv-11165-SFC-MKM

Honorable Sean F. Cox

| | |
|---|---|
| Richard T. Hewlett (P41271) | Michael C. Gibbons (P51304) |
| Attorney for Plaintiff | Victor A. Veprauskas IV (P59278) |
| Dawda, Mann, Mulcahy & Sadler | Keith C. Jablonski (P62111) |
| 39533 Woodward Avenue, Suite 200 | Attorneys for Defendant |
| Bloomfield Hills, MI  48304 | 200 East Long Lake Road, Suite 110 |
| (248) 642-3700 | Bloomfield Hills, MI 48304 |
| | (248) 645-9400 |

_____/

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO QUASH SUBPOENA ISSUED TO CHRYSLER GROUP, LLC
OR FOR PROTECTIVE ORDER PRECLUDING DISCOVERY**

**BACKGROUND**

    McNaughton initiated the instant litigation against Linamar, alleging that McNaughton is entitled to recover from Linamar on an unjust enrichment/quantum meruit claim. The McNaughton claim arises out of the cancellation of a Chrysler project commonly referred to as the DCT Kokomo Project.

    This project, based in Kokomo, Indiana, was a joint venture between Chrysler and Getrag to build a plant that would, among other things, produce a new dual clutch transmission (DCT)

4

for Chrysler vehicles. Due to various financial maladies within both Chrysler and Getrag, the project was never funded, and was ultimately canceled.

Chrysler had a supply contract with Linamar for Linamar to provide certain machines that would be put into operation in the Kokomo facility. These machines are commonly referred to as CNC machines and solenoid machines.

In order to build the machines, Linamar contracted with several suppliers, including Ann Arbor Machine. In turn, Ann Arbor Machine apparently had several suppliers that provided components and parts to be put into the machines being prepared for Linamar/Chrysler. One of these suppliers of Ann Arbor Machine was McNaughton. At no point in time did Linamar and McNaughton have a direct contractual relationship.

As indicated, in October 2008, the Kokomo Project was canceled by Chrysler. Chrysler eventually paid a "cancellation fee" to Linamar to partially compensate Linamar for its expenses and expenditures on the project up until that time. In turn, Linamar negotiated with each of its suppliers to pay them a "cancellation fee." One of these suppliers with whom Linamar negotiated a cancellation fee was Ann Arbor Machine.

Upon information and belief, shortly after Linamar reached an agreement with Ann Arbor Machine, Ann Arbor Machine ceased doing business. It is believed that Ann Arbor Machine had a secured lender with a priority lien position that received substantially all of the money Linamar paid to Ann Arbor Machine for the cancellation fee.

Subsequently, McNaughton, apparently unable to obtain payment for the component parts it provided to Ann Arbor Machine, asserted its claim based on an unjust enrichment theory against Linamar directly. Linamar has vigorously asserted that McNaughton's claim lacks merit

because Linamar never received a direct benefit from Ann Arbor Machine as a result of McNaughton supplying parts and components to Ann Arbor.

Linamar and McNaughton have both undertaken discovery in this matter, in the form of interrogatories, requests for admissions, document requests and depositions.

In December 2009 and January 2010, Linamar provided many documents and interrogatory answers to McNaughton.  Subsequently, during a deposition taken pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Linamar's representative, Tim Feil, identified more documents that might be relevant to McNaughton's claims.  These documents were requested from Linamar by McNaughton, and as of recently the majority of them have, in fact, been provided to McNaughton.  McNaughton has requested and has received permission to continue its Rule 30(b)(6) deposition of Linamar by deposing another officer of Linamar (Ken Myers) who has information and knowledge about the DCT Kokomo Project, generally; and the negotiations after the project was canceled by Chrysler, specifically.  Mr. Myers is scheduled to be deposed on March 29, 2010.

During Mr. Feil's deposition, McNaughton's counsel sought information related to the negotiations between Chrysler and Linamar on Linamar's cancellation claim.  Mr. Feil did not have direct firsthand knowledge of most of these negotiations, nor did he have firsthand knowledge of many of the negotiations between Linamar and its suppliers, including Ann Arbor Machine.

Linamar has indicated on more than one occasion that it is willing to produce Mr. Myers to testify on behalf of Linamar on those topics with which Mr. Feil was not familiar.  In fact, McNaughton acknowledges that it will seek to obtain that information from Mr. Myers when he is deposed on March 29.

In the interim, however, McNaughton has issued the instant subpoena to Chrysler. Linamar opposes the subpoena and seeks to have it quashed for several reasons. First, and most importantly, it is asserted that all of the information sought by the subpoena to Chrysler has either previously been provided or will be provided in documentary or testimonial form by Linamar itself. Second, seeking information directly from Chrysler creates a substantial risk that commercially protected confidential, trade secret or other confidential information will be disclosed to McNaughton by Chrysler. Given Linamar's status as a tier-one supplier to several original equipment manufacturers (OEMs), including Chrysler, the disclosure of confidential information related to the Chrysler-Linamar business relationship could have financially prejudicial consequences for Linamar.

Applicable law authorizes Linamar to move to quash the subpoena and seek a Protective Order precluding the discovery, and the case law interpreting the Federal Rules of Civil Procedure dictates that this request be granted.

## LEGAL ARGUMENT

**I.      Standing**

While it is true, in a general sense, that the protections afforded by Fed. R. Civ. P. 45(c) and the right to quash a subpoena based upon those provisions are vested in the party to whom the subpoena is directed, there is case law in Michigan and elsewhere that clearly suggests that Linamar has proper standing to seek to have the subpoena quashed. There is further Michigan case law which makes clear that, even if a motion based on Fed. R. Civ. P. 45(c)(3) is not appropriate, a party may seek to preclude discovery sought from a non-party by virtue of a motion for protective order based upon Fed. R. Civ. P. 26(c) (see, e.g. *White Mule Co. v ATC Leasing Co., LLC*, 2008 LEXIS 51344 [N.D. Ohio June 25, 2008]); where the court held that

defendant ATC had standing to seek a protective order to preclude discovery even though subpoenas were issued on third-parties).

Or, as the court in *Underwood v Riverview of Ann Arbor*, 2008 LEXIS 107323 (E.D. Mich. February 15, 2008), stated, "Courts within the Sixth Circuit have interpreted Rule 26(c) to permit 'a party' . . . to seek a protective order [on a third-party's behalf]"; citing *White Mule Co. v ATC Leasing Co., LLC*, *supra*.

Thus, even though Michigan case law suggests that a party does not have an absolute right to move to quash a subpoena directed to a non-party pursuant to the provisions of Rule 45, the courts have provided a mechanism to parties, such as Linamar here, to move to preclude certain discovery from being obtained from non-parties by operation of a protective order obtained in accordance with Rule 26(c).

## II.     Overview of Fed. R. Civ. P. 45(c)(3)

Although typically this rule should be invoked directly by the party from whom the subpoena is directed, the case law interpreting the rationale of the rule is nevertheless instructive in deciding the instant motion.  For example, in *Hilton-Rorar v State and Federal Communications, Inc.*, 2010 LEXIS 864 (N.D. Ohio January 5, 2010), the court, citing *Bogosian v Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir. 2003), stated, "In evaluating a motion to quash a subpoena, the Court may consider 'whether (i) the subpoena was issued primarily for purposes of harassment, (ii) there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, nonprivileged, and crucial to the moving party's case.'" *Id.* at 5; *Bogosian, supra*, at 66.

**III.    Overview of Fed. R. Civ. P. 26**

Fed. R. Civ. P. 26(b)(2)(C) provides that a court must limit the extent of discovery if the discovery sought "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or if "the burden or expense of the proposed discovery outweighs its likely benefit . . ."  Fed. R. Civ. P. 26(b)(2)(C); *Recycled Paper Greetings, Inc. v Davis*, 2008 LEXIS 10649 (N.D. Ohio 2008).

Moreover, as summarized in *White Mule Co. v ATC Leasing Co., LLC, supra*, and *Mayes v City of Oak Park*, 2007 LEXIS 4391 (E.D. Mich. 2007), a party does have adequate standing to seek a protective order to preclude discovery from subpoenas issued to third-parties.  This relief is available under Fed. R. Civ. P. 26(c), and requires a showing of good cause.  *Id.*

More particularly, in this case a protective order is appropriate pursuant to Fed. R. Civ. P. 26(c)(1)(G) because the information sought by McNaughton from Chrysler constitutes trade secret or other confidential research, development or commercial information.

**IV.    Analysis**

The McNaughton subpoena to Chrysler itemizes six categories of documents to be produced (see Exhibit A).  Of the requested documents, those in paragraphs 1, 2 and 5 have previously been provided to McNaughton.  The remaining requested documents, those in paragraphs 3, 4 and 6, have arguably also been produced in one form or another.

More importantly, the information sought to be obtained from these requested documents should be readily available from the testimony of Ken Myers.  Mr. Myers personally was involved in the negotiations between Linamar and Chrysler relative to the cancelation fee paid by Chrysler.  Mr. Myers was also personally involved in negotiations on behalf of Linamar with its own suppliers for their respective cancellation claims.  Thus, at a minimum, the information

sought by way of the documents requested in paragraphs 3 and 6 is readily available via documents already provided by Linamar and the testimony of Mr. Myers.

Lastly, the information sought by paragraph 4 of the subpoena can and should be obtained from Ann Arbor Machine, as it was the entity constructing the machines in question, and its employees would have direct firsthand knowledge of the inclusion of McNaughton's parts and components in those machines.

As indicated, Linamar and Chrysler have an ongoing business relationship.  Linamar is a tier one supplier to Chrysler and other OEMs.  The instant request by McNaughton to Chrysler may have an ulterior motive, inasmuch as McNaughton would like to show that Linamar attempted to deceive Chrysler as to the amounts its suppliers actually were to receive from Linamar once Linamar received its cancellation fee from Chrysler.  While this assertion is, in fact, untrue, Linamar asserts that the mere suggestion of such a plan will have a negative impact on Linamar's ability to engage in negotiations with Chrysler on other projects.

More importantly, the negotiations between Linamar and Chrysler on the final amount of payment by Chrysler on the cancellation claim went on over several months.  It must be understood that these negotiations took place against the backdrop of Chrysler's filing for bankruptcy in 2009.  Linamar, in point of fact, accepted a drastically reduced amount in satisfaction of all of its claims against Chrysler based on this cancellation.  Linamar and Chrysler also agreed that Linamar alone would be responsible for finalizing all "supplier cancellation claims," and release Chrysler from all potential liability arising from any such claims.  The dissemination of materials related to these negotiations will have a detrimental effect on Linamar's standing in the marketplace in its dealings with other OEMs.  Likewise, any further

disclosure of particular terms and conditions or contracts that may be in place between Linamar and Chrysler are not only irrelevant but also protected commercial information.

Finally, the information requested from Chrysler is irrelevant, and it is not likely to lead to the discovery of admissible evidence, as required by Fed. R. Civ. P. 26(b)(1).

McNaughton's claim is based on its allegation that Linamar was unjustly enriched at the expense of McNaughton when Ann Arbor Machine failed to pay McNaughton for the electrical parts.  However, as the deposition testimony of Tim Feil made clear, Linamar never received the machines Ann Arbor Machine was manufacturing for this project, and it certainly never received the parts shipped by McNaughton to Ann Arbor Machine.

McNaughton's claim is based on a quasi-contractual theory that Linamar was unjustly enriched, to McNaughton's detriment.  Michigan law is clear on the elements of such a claim:

> The essential elements of a quasi contractual obligation, upon which recovery may be had, are the receipt of a benefit by a defendant from a plaintiff, which benefit it is inequitable that the defendant retain.  *MEEMIC, supra* at 198, quoting *Moll v Wayne co.*, 332 Mich 274, 278-279; 50 NW2d 881 (1952).  Thus, in order to sustain a claim of quantum meruit or unjust enrichment, a plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant.  *Barber v SMH (US), Inc.*, 202 Mich App 366, 375; 509 NW2d 791 (1993).  In other words, the law will imply a contract to prevent unjust enrichment only if the defendant has been unjustly or inequitably enriched at the plaintiff's expense.  *Morris Pumps v Centerline Piping, Inc.*, 273 MA 187, 195 (2006).

Thus, in order to prevail on its claim, McNaughton must show that Linamar derived a benefit from some act or omission of McNaughton.  In this context, even assuming for the sake of argument that McNaughton could fashion a scenario wherein Linamar benefitted from the Kokomo Project as a whole, this is irrelevant to the success or failure of its claims for unjust enrichment.  In other words, whether Linamar received some benefit from Chrysler is not pertinent.  Consequently, any documents pertaining to the Linamar/Chrysler relationship are not

pertinent to the development of McNaughton's claim for unjust enrichment.  It logically follows, then, that the instant request from Chrysler seeks irrelevant information that will neither bolster McNaughton's claim nor lead to the discovery of admissible evidence.

## CONCLUSION

The subpoena issued by McNaughton to Chrysler should be quashed, or the discovery sought therein should be precluded by virtue of a Protective Order because the majority, if not all, of the information sought by the subpoena can be obtained from other sources, namely Linamar and Ann Arbor Machine.  Further, some of the information sought by the subpoena is irrelevant and not likely to lead to the discovery of admissible evidence.  Finally, the discovery should be limited or precluded because it would require the disclosure of privileged or other protected material, and/or trade secret or other confidential research, development, or commercial information whose disclosure would detrimentally affect Linamar.

WHEREFORE, for the foregoing reasons, Defendant Linamar Corporation respectfully requests that the Court issue an order quashing the subpoena or, in the alternative, issue a Protective Order pursuant to Fed. R. Civ. P. 26(c) indicating that the discovery sought via the subpoena not be had or be restricted in another manner deemed appropriate by the Court.

>BEIER HOWLETT, P.C.
>
>/s/ Keith C. Jablonski_____
>Michael C. Gibbons (P51304)
>Keith C. Jablonski (P62111)
>Attorneys for Defendant
>200 E. Long Lake Road, Suite 110
>Bloomfield Hills, MI  48304
>(248) 645-9400
>kjablonski@beierhowlett.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 10, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification to all ECF participants, and by U.S. Mail upon Janet Delecke, Attorney for Chrysler LLC, 1000 Chrysler Drive, CIMS 485-1362, Auburn Hills, MI 48326

      BEIER HOWLETT, PC

      /s/Keith C. Jablonski
      Keith C. Jablonski (P62111)
      Attorney for Defendant
      200 E. Long Lake Road, Suite #110
      Bloomfield Hills, MI 48304
      (248) 645-9400
      kjablonski@beierhowlett.com