UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

McNAUGHTON-McKAY ELECTRIC CO.,

        Plaintiff,

v.                                        Case No. 09-11165

LINAMAR CORPORATION,              Hon. Sean F. Cox

        Defendant.
_____/

**OPINION & ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff McNaughton-McKay Electric Co. ("McNaughton") sued Defendant Linamar Corporation ("Linamar"), alleging a claim of quantum meruit / unjust enrichment. The case is before the Court on the parties' cross-motions for summary judgment.[1] The parties presented oral argument on July 15, 2010. For the following reasons, the Court shall DENY McNaughton's motion for summary judgment and shall GRANT Linamar's motion for summary judgment.

BACKGROUND

McNaughton filed its complaint on March 30, 2009 (Doc. No. 1), asserting one claim for quantum meruit / unjust enrichment. On May 07, 2010, after the close of discovery, both parties

---

[1] Linamar's motion included a motion for dismissal which was originally made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Linamar's reply brief noted that it should have been made pursuant to Rule 12(c). Because Linamar filed its motion after the close of discovery, the Court shall construe the entire motion as a motion for summary judgment pursuant to Rule 56.

1

filed motions for summary judgment. *See* McNaughton's motion and supporting brief, (hereinafter "Pl.'s Br.") (Doc. No. 26), and Linamar's motion and supporting brief (hereinafter "Def.'s Br.") (Doc. No. 29).

Pursuant to this Court's practice guidelines, McNaughton filed a statement of undisputed material facts (hereinafter "Pl.'s stm. of fact") (Doc. No. 28). Linamar also filed a statement of material facts not in dispute (hereinafter "Def.'s stm. of fact") (Doc. No. 25). On May 28, 2010, both parties filed counter-statements of material facts (hereinafter "Pl.'s counter-stm" and "Def.'s counter-stm") (Doc. Nos. 35 & 32, respectively). The following facts can be gleaned from the parties' submissions.

In 2008, Linamar contracted with Chrysler Group, LLC ("Chrysler") to operate a facility in Kokomo, Indiana. The venture was known as the "Kokomo project," and the plan called for Linamar to produce dual clutch transmissions at the facility. (Def.'s stm. of facts ¶ 1; Pl.'s stm. of facts ¶ 1).

As part of the Kokomo project, Linamar was to use four "special-purpose machines" which would be installed at the manufacturing facility. (Def.'s stm. of facts ¶ 2; Pl.'s counter-stm. ¶ 2). Linamar contracted with Ann Arbor Machine Company, Inc. ("Ann Arbor Machine") to build the special-purpose machines. (Def.'s stm. of facts ¶ 3; Pl.'s counter-stm. ¶ 3). Ann Arbor Machine, in turn, contracted with McNaughton to supply parts and components which were incorporated into the machines. (Def.'s stm. of facts ¶ 4; Pl.'s counter-stm. ¶ 4). Linamar did not have a contract with McNaughton for the project. (Def.'s stm. of facts ¶ 5; Pl.'s counter-stm. ¶ 5).

McNaughton claims that it timely and properly provided the components to Ann Arbor

Machine (Pl.'s Cmpl. at ¶ 12). Despite this, Ann Arbor Machine allegedly only paid $603.55, leaving a balance of $423,412.07. (Pl.'s Cmpl. at ¶ 17).

On October 22, 2008, Chrysler notified Linamar by email that it had decided to cancel the Kokomo project. (Def.'s stm. of facts ¶ 6; Pl.'s counter-stm. ¶ 6). On October 24, 2008, Linamar sent a letter to its suppliers advising them of the cancellation. (Def.'s stm. of facts ¶ 7; Pl.'s counter-stm. ¶ 7).

On January 27, 2009, Chrysler and Linamar reached an agreement to resolve all outstanding Linamar claims related to the cancellation of the Kokomo project in exchange for $16.6 million. (Def.'s stm. of facts ¶ 8; Pl.'s stm. of facts ¶ 18). On January 30, 2009, Chrysler paid Linamar $2 million of the agreed settlement. (Def.'s stm. of facts ¶ 10; Pl.'s counter-stm. ¶ 10).

On March 27, 2009, Chrysler and Linamar amended their agreement so that Linamar would only receive $10.25 million in payments from Chrysler. (Def.'s stm. of facts ¶ 9; Pl.'s stm. of facts ¶ 21). McNaughton maintains that Linamar also received "prospective business opportunities" and "other financial concessions." (Pl.'s counter-stm. ¶ 9; Pl.'s stm. of facts ¶ 20).

Also on March 27, 2009, Linamar and Ann Arbor Machine signed an agreement settling Ann Arbor Machine's claims against Linamar in exchange for a payment of $5 million with a "holdback" of $150,000.[2] (Def.'s stm. of facts ¶ 12, 13; Pl.'s counter-stm. ¶ 12, 13).

Under the settlement agreement with Ann Arbor Machine, Linamar retained the right to take possession of the special-purpose machines, <u>but never did so</u>. (Pl.'s stm. of facts ¶ 24; Def.'s

---

[2]According to McNaughton, the cancellation agreement between Linmar and Ann Arbor Machine provided that the "holdback" sum would be paid after Ann Arbor Machine negotiated the claims of its suppliers. (Pl.'s Br. at 8) (Pl.'s Ex. 33).

3

stm. of facts ¶ 19). Rather, Ann Arbor Machine's creditor, Citizens Bank, seized the machines and sold them at auction. (Def.'s stm. of facts ¶ 20; Pl.'s counter-stm. ¶ 20).

On March 31, 2009, Chrysler paid Linamar the remaining $8.25 million. (Def.'s stm. of facts ¶ 11; Pl.'s counter-stm. ¶ 11).

On April 1, 2009, Linamar paid Ann Arbor Machine $4.85 million. (Def.'s stm. of facts ¶ 14; Pl.'s counter-stm. ¶ 14). McNaughton claims that this amount was less than half of the total costs of the special-purpose machines. (Pl.'s stm. of facts ¶ 26).

McNaughton sued Ann Arbor Machine on its contract, and obtained a default judgment. (Pl.'s stm. of facts ¶ 28; Def.'s counter-stm. ¶ 28). McNaughton claims that it has not been able to collect on that judgment because Ann Arbor Machine has gone out of business. (Pl.'s stm. of facts ¶ 29).

McNaughton further claims that Linamar never paid Ann Arbor Machine the $150,000 holdback amount, nor did they use any of that money to pay Ann Arbor Machine's suppliers. (Pl.'s stm. of facts ¶ 24).

Lastly, McNaughton claims that Linamar received $10.25 million in payments from Chrysler, but only paid out $7,489,000 of that amount, retaining a total of $2,760,000 as "extra income." (Pl.'s Br. at 14).

## STANDARD OF REVIEW

Summary judgment is proper where "there is no genuine issue as to any material fact" and where the moving party is "entitled to judgment as a matter of law." FED.R.CIV.P. 56(c)(2). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories,

4

and admissions on file, together with the affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)). In deciding a motion for summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

ANALYSIS

I.    <u>Legal Standard For Quantum Meruit And Unjust-Enrichment Claims</u>

"Even though no contract may exist between two parties, under the equitable doctrine of unjust enrichment, a person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Kammer Asphalt Paving Co. v. East China Twp. Schools*, 443 Mich. 176, 185 (1993) (internal quotes and citations omitted). "[I]n order to sustain a claim of unjust enrichment, a plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 195 (Mich. App. 2006); *see also First Presbyterian Church of Ypsilanti v. H.A. Howell Pipe Organs, Inc.*, 2010 WL 419972, *9 (E.D. Mich. 2010).

"Whether a claim for unjust enrichment can be maintained is a question of law." *Morris Pumps*, 273 Mich. App at 193 (citing *Dumas v. Auto Club Ins. Ass'n.*, 168 Mich. App. 619, 637 (Mich. App. 1988); *Liggett Restaurant Group, Inc. v. Pontiac*, 260 Mich. App. 127, 137 (Mich. App. 2003)).

5

II.     Did Linamar Receive A Benefit From McNaughton?

The first inquiry of an unjust-enrichment claim is whether the defendant received a benefit from the plaintiff. *Morris Pumps*, 273 Mich. App. at 195.

McNaughton argues that its claims are analogous to those of the plaintiff in *Morris Pumps*, while Linamar argues that *Morris Pumps* is distinguishable.

*Morris Pumps* involved the following facts. The City of Detroit contracted with the defendant, EBI-Detroit, Inc, a general contractor, to construct a wastewater-treatment facility.

The defendant subcontracted the mechanical portion of the project to Centerline Piping. Centerline Piping, in turn, entered into an agreement with the plaintiff, Morris Pumps, to supply equipment and materials.

Shortly after the plaintiff delivered the equipment to project site, Centerline went out of business. Neither Centerline, nor the defendant ever paid the plaintiff.

The defendant retained a replacement subcontractor to finish the work that Centerline had left unfulfilled. That subcontractor used the equipment and materials that the plaintiff had delivered to the project site. The subcontractor did not bill the defendant for those items, nor did it ever pay the plaintiff for them.

The plaintiff filed suit against Centerline for breach of contract, and against the defendant for unjust enrichment. The plaintiff moved for summary disposition against the defendant, and the trial court granted the motion, noting that Centerline had gone out of business.

The defendant appealed. It first argued that the unjust-enrichment claim was barred by the existence of an express contract between the plaintiff and Centerline.

The court of appeals noted that "[g]enerally, an implied contract may not be found if there is an express contract *between the same parties* on the same subject matter." *Id.* at 194 (citation omitted) (emphasis in original). In *Morris Pumps*, however, the court recognized that the "defendant was not a party to . . . the express contract[]. Therefore, the contract[] did not exist between the same parties. Because there [was] no express contract[] between the same parties on the same subject matter, [the] defendant's argument with respect to this issue must fail." *Id.* at 195.

Linamar argues that *Morris Pumps* is distinguishable from this case. In *Morris Pumps*, the defendant retained and used the plaintiff's parts. Here, however, both parties agree that while Linamar had a right to take possession of the special-purpose machines built by Ann Arbor Machine, it never actually took possession. (Def.'s Br. at 13). Rather, Ann Arbor Machine's creditor seized and auctioned the machines.

McNaughton counters, "Whether Linamar actually possessed the . . . [m]achines is not relevant to the facts of *Morris Pumps* nor to the outcome of this Motion. The use of the McNaughton parts and components to build the . . . [m]achines, which caused Linamar to receive a substantial cancellation payment, resulted in benefit to Linamar. Obviously, the mere existence of the machines was sufficient benefit for Linamar to receive all of the benefits it did." (Pl.'s Reply at 4).

As noted above, the primary inquiry for unjust-enrichment claims is not whether the defendant possessed a tangible object, but whether the defendant received a *benefit* from the plaintiff, and an inequity resulted to the plaintiff because of the retention of the benefit. *Id.* at 195; *see also First Presbyterian Church of Ypsilanti*, 2010 WL 419972, *9.

7

Notably, in *Morris Pumps*, the defendant received a benefit from the defendant by "retaining and using" the plaintiff's materials. *Morris Pumps,* 273 Mich. App. at 197.[3] Here, however, it is uncontested that Linamar did not retain or use the special-purpose machines built by Ann Arbor Machine.

In light of this, McNaughton argues that Linamar had the right to take possession of the machines, and that the right alone was a benefit. Even if this right could be construed as a benefit, Linamar did not receive the right from McNaughton. Rather, it received the right from Ann Arbor Machine. (Pl.'s Ex 33 "Settlement Agreement" at ¶ 7(a)); *see also* (Pl.'s Br. at 8).

Further, McNaughton alleges that Linamar received a benefit by virtue of having received a cancellation fee from Chrysler. To the extent that Chrysler's cancellation fee was a benefit, it came from Chrysler, not McNaughton.

The language of *Morris Pumps* is clear: "in order to sustain a claim of unjust enrichment, a plaintiff must establish (1) the receipt of a benefit by the defendant *from the plaintiff* . . . ." *Id.* at 195 (emphasis added). Here, McNaughton has failed to present any evidence that Linamar received a benefit *from McNaughton*.

McNaughton claims that the benefit received by Linamar does not have to be "tendered 'directly' by McNaughton." (Pl.'s Reply at 5). "Numerous cases have held that a benefit may be unjustly obtained by a defendant through an intermediary, especially if there is some wrongdoing

---

[3]At oral argument, McNaughton's counsel argued that the defendant in *Morris Pumps* never took "possession" of the plaintiff's materials. Regardless, in discussing the second element of unjust enrichment, the *Morris Pumps* court stated that the defendant *retained* and *used* the plaintiff's materials. *Id.* at 197, ("We simply cannot classify defendant's act of retaining and using the materials, without ever ensuring that plaintiffs were compensated for the materials, as innocent, just, or equitable.")

on the defendant's part." *Hoving v. Transnation Title Ins. Co.*, 545 F.Supp.2d 662, 670 (E.D. Mich. 2008) (citing *Kammer*, 443 Mich. at 186 (1993) and *Morris Pumps,* 273 Mich. App. 187). The Michigan cases which are cited in support of this proposition, however, are distinguishable from this case.

In *Kammer*, the plaintiffs were subcontractors who contracted with a general contractor to renovate athletic facilities in the East China School District. The plaintiffs completed the renovations, but were never paid by the general contractor or by the holder of the construction bond.[4] The court allowed the plaintiff's unjust-enrichment suit to proceed against the school district, after finding that the plaintiff indirectly provided the school district with a benefit (asphalt paving). *Kammer,* 443 Mich. at 187.

As noted above, in *Morris Pumps*, the plaintiff provided materials which the defendant later retained and used to complete its contract with the City of Detroit.

In both *Kammer* and *Morris Pumps*, the plaintiff's provided an intermediary with a benefit, which the intermediary in turn provided to the defendant. In both cases, the defendant received the same benefit that the plaintiff initially provided to the intermediary. This case is distinguishable, however, because Linamar never received the benefit (electrical components) that McNaughton provided to Ann Arbor Machines.

There is no genuine issue of material fact as to whether Linamar received a benefit from McNaughton. Accordingly, the Court shall deny McNaughton's motion for summary judgment and grant Linamar's motion.

---

[4]The bond was invalid and unenforceable because the company that purportedly issued the bond did not actually exist.

CONCLUSION & ORDER

For the reasons stated above, the Court DENYS McNaughton's motion for summary judgment and GRANTS Linamar's motion for summary judgment.

IT IS SO ORDERED.

        s/Sean F. Cox
        Sean F. Cox
        United States District Judge

Dated: August 11, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 11, 2010, by electronic and/or ordinary mail.

        s/Jennifer Hernandez
        Case Manager